May I call the case of Mr. Gautam v. the U.S. Attorney General May, shall I go ahead, Judge? Yes, thank you. I don't see you until you start talking, so good morning. Thank you, sorry. Thank you. Thank you for being with us. You can proceed. Thank you. I'm Shanta Driver, and I am representing Mr. Gautam in this case. And I'd like to start by clarifying issues that I think have become a little bit muddled in this case to make clear what it is and why it is that Mr. Gautam is asking this court to overturn the decision of the BIA and to find that he is entitled to deferral under the Convention Against Torture under CAP. There are two issues that I think have been confused. The first is, under what circumstances is it fair to say that a prosecution can be seen as persecution? And the second issue is, if that is shown, then what evidence is there in the record that would lead a court to determine that the likelihood of torture based on the government's already pursuing unfounded case would occur? Because this is a CAT case, no court, you don't have to decide whether or not Mr. Gautam is guilty or innocent of the murder that he was charged with in Nepal in 2000. What you do have to do is decide whether the process that resulted in the Supreme Court decision in 2009, and then Mr. Gautam's request of the government to send Mr. Gautam back to extradite him in 2017, constitute a process that is fair and is objective and is something that anybody in a civilized society would think was a reasonable method of proceeding. I think I'd like to refer the court to... Mr. Ivor, can I ask you a quick question? I just want to make sure I've kind of got my bearings. You started off by saying this is fundamentally a CAT case. I guess I had in my mind that we had sort of the usual succession of arguments here, asylum, withholding, and then CAT as sort of a backup, but it sounds like you're sort of riding the CAT argument primarily? That's exactly right, Judge, because I think that's the clearest way to get to the path of his being granted some kind of relief. I think if we were talking about asylum or withholding, we would have to get into issues of his credibility, was he hurt in the past, all of that. That isn't actually necessary in a CAT case. So that's why I think it makes sense to really litigate that matter. Just to follow up on that, I mean, nobody looked into the validity of the conviction. So to the extent that there were any credibility determinations made, they weren't made with regard to whether he committed the crime or not, right? Yes and no, but for the purposes of this, I'll just say that the government's position is that a court cannot look into what were the circumstances of the conviction or what surrounded it. And I think that's just wrong. I'd like to refer the court to a case that is Doe v. Gonzalez. It's a Seventh Circuit case, and it's 484 F3D 445, Seventh Circuit, 2007, because I think it explains and sets out the standard very well. It's a case that was decided by Judge Posner, and in the case, he's looking at whether or not the claim of the asylum seeker is legitimate based on the fact that the government of El Salvador found the asylum seeker guilty of murder. And the part of the way that the asylum seeker is challenging whether or not it is likely that he will be persecuted is by asking the court to look at the proceedings, to look at the actual case and make a decision about whether or not that case is something that, as Judge Posner said, is totally incomprehensible factually and legally, and he says a good analogy is to make a determination, whether or not the legal proceedings could be characterized as proceedings in a kangaroo court that would make a kangaroo blush. And I think in this case, yes, these proceedings, if you look at them completely fit into that mold and I'll come back to that in one second. And I just want to say that what Mr. Gautam is using the question of the court proceedings to establish is that there is no reasonable basis on which any court could come to the conclusion that the procedures that he went through, or that his case went through in Nepal are fair, are just, are comprehensible, are based on any kind of evidence, and that is really to show that he will be persecuted, because he was persecuted. Can I just, again, sorry, Judge Newsome, I just want to make sure that I'm connecting dots here. I don't think I understand yet. I, you know, you've talked about, I understand the whole bit about the underlying conviction, but somehow to make a cat claim, you've got to get to, you know, a more likely than not that he will be tortured if returned showing, and I just don't understand yet the connection between those two things. Yeah, thank you. Yeah. So, I think step one is, is he being, has the government undertaken a course of action, which is to use the legal system to persecute Mr. Gautam. That's step number one and that's look at the case and make your own determination based on the, what is presented in the case, whether or not that case constitutes a proper prosecution or persecution. Step two is, if you decide that it is persecution, which I think you will when you look at the record, then the second question is, is there evidence in the record that shows that the government of Nepal has been, is a government that can be accused of conducting so many human rights violations that it is fair to make the presumption that he is more likely than not to be tortured if he sent back to Nepal, based on the human rights record of the government, and specifically in this case, on the question of looking at Although I guess just in fairness, right, I mean, the way that we review the BIA decision is for substantial evidence and so it's not for us to think that it might be fair based on the evidence that torture might occur, but we have to conclude that the BIA was to, you know, to paraphrase like really wrong in concluding the contrary. Right. That's right. And I think that thankfully because of Nasrallah, you'll be able to look at the facts of the case. I want to give you some examples. Can I just follow? I mean, there's nothing in the record where either the IJ or the BIA actually examined the validity of the conviction as the tool of persecution itself. Right. I mean, they just didn't do that. They didn't think they could and so they didn't do it. And that's That's correct. And I think they're wrong in making that presumption. Because what they argue is, okay, we don't have the right to look at this conviction and make a determination. Did he or did he not murder the person that he's accused of murdering? But that's not what we are asking of him because it's a cat case. In a cat case, even if he had murdered the person, he would be entitled to cat in this country if we can show that it's more likely than not that he will be tortured. And I think in this case, if you go through the record, I think it will become absolutely clear that the decision that was made by the Nepali Supreme Court in 2009 to overturn the decision of the appeals court and the district court that found Mr. Gautam not guilty was a decision that just makes no sense. So just a quick question. I know that your time has expired, but I want to make sure that we have all the cards on the table before your opponent gets up to talk. So is what you're saying in response to Judge Martin that basically sort of this whole like whether you can look behind the conviction or whatever, like, forget about it. This is a cat case. And whether you can or can't do or don't, what you fundamentally got to look to is whether he is more likely than not to be tortured when returned and that we can sort of just bypass the whole issue about the look behind. It's not that you can bypass it. It's that you're when you look at the case and all of the all of the case laws on this subject shows you can look at the case. It's that when you're looking at the case the determination that you're making is whether the conclusion of the Nepali Supreme Court is is based on actual evidence is fair is reliable, or whether that decision makes clear that he will be persecuted because the decision in and of itself is a tool of persecution. Okay, thank you. Can I go on. No, your time is up but five minutes for Christopher Bates now. Morning, your honors may please the court. Christopher base the respondent. Under the substantial evidence standard, it is the petitioner bird petitioners burden to show that the evidence in the record compels the conclusion that the petitioner has met the requirements for relief. The petitioner has not done so here. And this court should therefore deny the petitioner for review. I first like I think picking up on Judge Newsome's questions to Mr driver emphasize that to the extent that the petitioner is limiting his claim here to a cat claim a claim or the Convention against torture. The relevant question for this court is whether the petitioner has shown that the evidence compels the conclusion that he is more likely than not to experience torture fee is returned to Nepal. As we have explained in our brief, the evidence that the petitioner points to is evidence of general prison conditions in Nepal, general substandard prison conditions, do not constitute torture in the absence of specific intent, showing that the prison evidence in the record that compels that conclusion. And therefore, the petitioner has not met the requirements to prevail before this court with regard to the cat claim. With regard to the question of this court's ability to look behind the record of conviction of the petitioners Nepalese murder conviction. The extent. So it sounds like the petitioner is not seeking to have the court reassess his guilt or innocence, I would note that that is consistent with our position and is consistent with use of the board and other circuits. Those cases have generally arisen in the context of domestic convictions, but the board and other courts have stated very clearly that is not the ID immigration judges role to look behind the record of conviction to reassess guilt or innocence and in circumstances where individuals seeking relief have sought to argue that they were not guilty of the crime of conviction, or that, you know, the facts not established guilt or innocence, the BIA and courts have declined to do that, and the reasons that would apply for that role in the domestic context would certainly apply in the foreign context as well. In fact, with even more force, you're dealing with Mr. Bates. Can I just get you to assume for me that we had a case where we knew that there was an oppressive government that had picked out one of somebody who was critical of their government and just manufactured a murder conviction, put them in jail. I mean, just assume those facts for me. I mean, is it the government's position that even under that circumstance, the IJ would be powerless to consider the conviction as the tool of persecution itself? So, I think our position, Your Honor, would be that it would be inappropriate for the immigration judge to make an independent determination of whether the petitioner was in fact guilty or innocent. The Shearer case, which this court... I'm saying, you know, could the IJ say this use of the judicial system in this country was a tool of persecution in this case? Can the IJ do that or can the IJ not do that in the government's view? So, if the evidence compelled the conclusion that the prosecution and conviction was politically motivated and resulted in disproportionate severe punishment, I think that that could potentially be the case, Your Honor. That's the scenario that the Shearer case describes. That's a little bit different from the circumstance here, but Shearer and cases from other circuits have recognized... I mean, the dispute wasn't about whether, you know, this charge... I mean, it wasn't about... In other words, here, Mr. Gautam is saying, you know, I didn't do this. And, you know, I was... I mean, the judicial system bore me out on that until it got to the Supreme Court where, you know, they have... I mean, this prosecution is the tool of persecution. So, I think it's different from Shearer in that regard. Don't you? Well, the cases like Shearer, the petitioners have argued that the prosecution itself is persecution. So, I think those cases might bear some analogy to this case in that the petitioners in those cases have argued that the fact of the government's action that was taken there, the prosecution itself, was persecution. I, you know, again, we're just assuming hypothetically, Your Honor, you know, that that is not necessarily the case here. But if there were indications separate apart from the actual sort of fact of conviction itself, that the prosecution or conviction was politically motivated. For example, in the cases that Pitchner has cited in his brief, there were statements by police officers when they arrested the petitioners in those cases, indicating that the arrests were politically motivated. They warned the petitioners that they needed to cease their activities. They indicated they were looking for the petitioner because of their political activities. If there were indications in the record that similar things were true with regard to the conviction, and this is just, of course, speaking hypothetically again, you know, if there were perhaps statements from the judge that, you know, referencing the petitioners' political activities, suggesting that the conviction was on the basis of those activities, something beside the mere fact of the conviction, I think that it might be possible to draw analogies to cases where courts have looked to the conduct of police officers in making arrests that have led to conclusions of political motivation in those cases. Certainly, again, under the substantial evidence standard here in this case, the record does not compel the conclusion that the petitioner How do we know that? I mean, nobody analyzed the record. I mean, there were lots of documents about this conviction that were never mentioned by the BIA. Isn't that right? They just thought they didn't have the power to examine that part of the record, as I understand it. Am I mistaken? So the board did state that it was not able to go behind the record of conviction to reassess guilt or innocence. I would note that just as in his brief to this court, the petitioner in his brief for the board sort of centered the entire prosecution as persecution argument on his argument that he was factually innocent of the crime. If I can just draw the court's attention to one statement. This is page 191 of the record from the petitioner's brief. He says, the most important and clearest evidence that the petitioner can provide to the court to prove he never murdered the victim is the comparison of the methodology and findings contained in each of his court proceedings is also the best and most convincing evidence of the political rather than the legal character of the decision. So I think that the board understood the petitioner to be grounding his prosecution as persecution claim on his allegation that he is factually innocent. And because the board understood that it was unable to look behind the record of conviction to determine his factual guilt or innocence that therefore that result is prosecution as as persecution claim. Just to be clear, it's, it's, it's the government's position that we can never look behind whether a foreign conviction is a form of persecution. Is that. I think I would, I think I would phrase it slightly differently, Your Honor. There was position that the, the immigration judge, the board and then this court on review that it's not the role of, you know, the, the board really forced to reassess factual guilt or innocence. What the immigration judge board or court could do is look to the circumstances surrounding the prosecution or in this case the conviction to see if there is evidence beyond the mere sort of conviction itself. You know, whether in the police conduct, leading up to the arrest, or the police conduct following arrest which is what was the case in the case of sites in their brief, or, and, you know, again this is just speaking hypothetically because that's if there were evidence from the proceedings that the proceedings themselves were politically motivated. So in other words, our position would be that the person must point to some other evidence or events beyond the mere fact of the conviction itself. I guess that's the problem I'm having. I mean, the petitioner did submit evidence related that he says shows that his conviction equals persecution in Nepal. But the immigration, I mean the immigration judge and the BIA both thought they didn't have the power to look at that. So that's, I mean you're creating, you're making a distinction that the IJ and the BIA both believe they were not allowed to make. Well, Your Honor, the evidence that the petitioner submitted in this case to support his claim that the prosecution and conviction was politically motivated. So the petitioner submitted the evidence about his alleged prior treatment by Maoists. The immigration judge of course found petitioner's testimony not credible. But other than the, you know, comparing the various decisions of the courts, the evidence, or I'm sorry, the petitioner's case or narrative here is based on a chronology of events that actually sort of falls apart upon scrutiny, but... So you've analyzed it, but neither the IJ nor the BIA have analyzed that evidence. Well, again, Your Honor, the petitioner's central, sort of the core or crux of the petitioner's argument is that their prosecution was politically motivated because they are factually innocent. So that's what the board focused on in this decision. We're talking about sort of the evidence. In addition to that, there's the evidence of alleged treatment by Maoists in the past that the immigration judge... I'm sorry, I'm not even sure that the narrative that the petitioner has put forward about the timeline here, I'm not even sure that that is necessarily properly characterized, you know, as evidence per se. It's a description of sort of the chronology of events as the petitioners, you know, seize them. The evidence in the record actually contradicts that chronology. For instance, the petitioner says... But you're analyzing evidence that neither the IJ nor the BIA analyzed. I mean, if you can show me where they analyzed the evidence, it would be helpful. Because I understand that they did not. I mean, I'm reading from the BIA, you know, we're not... I mean, it quotes from from matter of robbers, which was, of course, a domestic conviction. But it says we're not allowed to look to analyze this conviction. Your Honor is correct that the board did not go through the petitioner's chronology of events to explain why it did not make sense. I would note that the board did find, this is on page six of the record, that the petitioner's corroborating evidence that the petitioner submitted in addition to his testimony did not independently satisfy the burden of proof. And the petitioner has not challenged that finding on appeal. So the board, you know, did at least on page six say they considered the petitioner's corroborating evidence and determined it did not independently satisfy the burden of proof, didn't go through the chronology in detail. Can I ask you just a record question, I guess? This is Judge Newsom. So what do we do with the fact, if anything, that the petitioner didn't mention the arrest and or conviction on any of the asylum applications? I mean, I assume that typically an asylum claim says, you know, I'm being persecuted on account of my, for instance, here, political opinion. But here, the asylum application sort of defeat the nexus argument, right? Because there was never, the arrest and conviction was never mentioned. So the political opinion piece of the theory as it currently exists never sort of got off the ground in the asylum application. What do we do with that? So, Your Honor is correct about that. In its decision, I believe both the immigration judge and the board, or at least one of them referenced this point and analyzed it in terms of the petitioner's credibility. So it sort of went to the credibility determination. The petitioner says that he fears persecution based on this ground, but didn't reference that ground in his prior application for relief. And so that went to the petitioner's credibility. And, you know, again, the petitioner has not challenged credibility determination. The board did also find that the credibility evidence did not impenetrably satisfy his burden. And if I may, just with, of course, just reference, mention a couple points that are relevant to the chronology here. Petitioner asserts that the conviction was reversed in 2009. Maos went out of power when they came back in 2017. They then went to seek to execute that notice. There were, in fact, Maos prime ministers in that interim period 2011-2013, 2016-2017. Interpol notice that was issued in this case was actually issued under a prime minister of the petitioner's own party. And the elections that took place in 2017 didn't finish until after that Interpol notice had issued. And then finally, with regard to the impeachment of the Nepalese chief justice, which occurred, I believe, in spring of 2017. The record indicates that that impeachment was actually done with support of the Nepalese Congress party or the petitioner's own party. For these reasons, we've asked the court to deny the petitioner. Again, not found by the, none of that referenced by the, by the opinions we're reviewing here. Right. Correct, Your Honor. I was providing that information. All right. Thank you. We'll hear from from Ms. Driver. Thank you, Judge. I mentioned Doe v. Gonzalez and I want to say another case that I think is relevant. It's Zun Li v. Holder. It's X-U-N-L-I v. Holder. It's 559-F-3-D-1096. It's a Ninth Circuit case from 2009. Both of these cases are cases in which the court is looking at determinations of a foreign government that a person is guilty of a crime. And in Doe, the court says, okay, look, this guy's been charged and convicted of murder. But when we look at the record and we look at the totality of circumstances, we understand that the people who are charging him are a group of generals who have been charged with war crimes and murder themselves. And not one of them has been prosecuted or found guilty of anything, which is exactly this situation. The Nepalese government has been urged repeatedly by the United Nations, by the U.S. government, by every international body to look at the disappearances of women, the murders that took place during the Civil War that went from 1996 to 2006. And the government has repeatedly, under all the different administrations, refused to do that because many of the people who are sitting in the government itself to this day are the people who have been accused of conducting those human rights violations. Ms. Driver, let me ask you a practical question. This is what I'm struggling with. You're saying, and you started off by saying in this case, that I'm not asking you to look behind the facts of the conviction, not looking at whether or not the murder conviction was valid, but the process that led to the conviction. If we agree with you and you walk in before the IJ and the BIA and you present the process, and we say the IJ and BIA would need to look at this process, what does the government do in response? Does that then push it on the government, the U.S. government, to go and look and say, but he's guilty of murder and so we have to look to the facts of the conviction? Are you sort of pushing us into looking behind the facts of the conviction anyway? It's really hard to separate out, and I understand that, Judge. But in this case, we're saying that it is actually the Supreme Court that is the party that determined that this man was guilty of something that he was exonerated for in 2000 and 2001 by a district court that had a trial, by an appeals court that reviewed the record. The Supreme Court gets the same record. They decide that they're going to enlist other experts to review the evidence of the case in order to come up with some new way to find that my client was guilty of the murder. The new panel says in its reports that what it finds does not substantiate what the Supreme Court wants to prove. There's no evidence that my client murdered the person. The only evidence in the record pertaining to this case is that he was reportedly, he reportedly talked to the victim in the middle of town the night that she was killed. So, yeah, it's hard to separate out the two issues. But if that's the sole evidence, there's no eyewitness evidence, there's no material witness, material evidence, there's nothing that can connect my client to the murder. And then all of a sudden the Supreme Court decides that we're going to throw out all of the previous decisions, nine years after those decisions were rendered and say that he is guilty, based on a record where he clearly was found not to be guilty and there's nothing new that has transpired to change that. Yeah, we think that that shows persecution. Well, let me ask you this. What if the facts are slightly different? What if there's a trial and he's found guilty? The appellate court throws it out, says no evidence of guilt whatsoever, and then the Supreme Court reinstates it. I would think you could still make the same argument. The appellate court had said there was absolutely no evidence. We can show you he was persecuted at the trial court and the Supreme Court level. And if that's the case, if the argument still exists, doesn't that then, don't we then have to go back to looking behind these court decisions to determine actual innocence? I think you have to look at the totality of circumstances in any of these cases. And if we were saying to you that, okay, we don't like the decision of the Supreme Court, and that decision was rendered in a timely manner and that Mr. Gautam was informed that there was an appeal of this decision, which had to be done within 70 days after the court decision. And then he lost, yeah, that would be a different situation. Here, he's never even informed within that 70 days that there's an appeal that's pending before the Supreme Court. He's never told that the Supreme Court or his lawyer are considering this issue, which is in violation of the Nepal Constitution. And, okay, that all is occurring within the overall circumstances that there are war crimes outstanding on nearly identical issues of the women and rape of murders that are not being prosecuted and that the response of the government to all the pressures that it's being placed under to actually carry out some hearings to determine whether those war crimes took place or not, is to serve up Mr. Gautam and say, oh, well, here's somebody that we did convict, and here's somebody that we are pursuing, and here's somebody that we're going to jail, even though- Ms. Strauber, I think we've got your argument. If you could bring it to a conclusion, I'd appreciate it. I can. I'm sorry, Judge. I do think that if you review the record, that you will find, first, that you have a right to look at what took place in terms of the conviction and the totality of circumstances. And, two, that in this case, prosecution is persecution, and that the overall human rights violations by the Nepali government, not just what they do in prison and other things- Okay, Ms. Strauber, we- Are fine. Okay, thank you. Thank you. Going to the next one. I appreciate the argument. I have a feeling you could talk about this case for a while, huh? Forever. We appreciate the presentation. Thank you. All right. Thank you, and we'll take the case under advisement.